```
1                      UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
2
   UNITED STATES OF AMERICA,
3                                      Criminal Case
                  Plaintiff(s),        No. 23-00321 (JEB)
4          v.
                                       Washington, D.C.
5  JAMES RAY EPPS, SR.,
                                       September 20, 2023
6                 Defendant(s).

7  --------------------------------------------------------

8                           PLEA HEARING
                  BEFORE THE HONORABLE JAMES E. BOASBERG
9                  UNITED STATES DISTRICT CHIEF JUDGE

10 APPEARANCES:

11 FOR THE PLAINTIFF(S):  Michael Gordon, Esquire
                          United States Attorney's Office
12                        Middle District of Florida
                          400 North Tampa Street
13                        Suite 3200
                          Tampa, Florida 33602
14

15
   FOR THE DEFENDANT(S):  Edward J. Ungvarsky, Esquire
16                        Ungvarsky Law, PLLC
                          421 King Street
17                        Suite 505
                          Alexandria, Virginia 22314
18

19

20 REPORTED BY:           Tammy Nestor, RMR, CRR
                          Official Court Reporter
21                        333 Constitution Avenue Northwest
                          Washington, D.C. 20001
22                        tammy_nestor@dcd.uscourts.gov

23

24

25
```

1  The following proceedings began at 3:01 p.m.:

2         THE COURTROOM DEPUTY:  All right.  We are here today

3  for a plea agreement hearing in Criminal Action 23-321, the

4  United States of America versus James Ray Epps, Sr.  Beginning

5  with counsel for the government, please state your name for the

6  record.

7         MR. GORDON:  Good afternoon, Your Honor.  Michael

8  Gordon for the United States.

9         THE COURT:  All right.  Mr. Gordon, good afternoon.

10  You were pretty choppy in terms of being able to hear you.  So

11  if you can do something to help, that would be great.

12         MR. UNGVARSKY:  Edward Ungvarsky on behalf of Ray

13  Epps, who is present on the VTC before the Court.  Good

14  afternoon.

15         THE COURT:  Thank you, Mr. Ungvarsky.

16         Mr. Epps, can you see and hear me okay?

17         THE DEFENDANT:  Yes.

18         THE COURT:  We are here for a plea.  Anything

19  preliminary before we begin, Mr. Gordon?

20         MR. GORDON:  No, Your Honor.

21         THE COURT:  Nicole, we still have to arraign Mr. Epps,

22  is that correct?

23         THE COURTROOM DEPUTY:  No, Your Honor.  I believe he

24  was arranged -- oh, he was not arraigned?  Maybe that's another

25  case.  Okay.  I can arraign him.

```
 1              THE COURT:  Go right ahead.

 2              THE COURTROOM DEPUTY:  Mr. James Ray Epps, Sr., you

 3      are charged in the one-count criminal information,

 4      18-1752(a)(2), disorderly or disruptive conduct in a restricted

 5      building or grounds.

 6              For the purposes of today's hearing, how do you wish

 7      to plea and do you waive the formal reading of the charges?

 8              MR. UNGVARSKY:  Your Honor, Mr. Epps, for purposes of

 9      the arraignment only, pleads not guilty and waives formal

10      reading.  Mr. Epps is prepared upon a guilty plea proceeding to

11      change his plea.

12              THE COURT:  Thank you.  Anything else preliminary,

13      Mr. Ungvarsky?

14              MR. UNGVARSKY:  I just want to tell you I am in a

15      room.  I have an intern in the room with me.  It's the only

16      other person in the room with me.  Mr. Epps is at his

17      residence.  And in the room with him is his wife.  That's the

18      only other person with him.  With that said, we are prepared to

19      go forward.

20              THE COURT:  All right.  Just so you folks know that,

21      as you can see, I am in the courtroom, which is open to the

22      public, and there are a number of members of the public and

23      media who are present here.

24              Mr. Epps, I understand from your attorney that you

25      wish to plead guilty today.  Is that correct?
```

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  I need to ask you certain

3    questions to ensure you understand your rights and that the

4    plea is voluntary.  If you don't understand any of my

5    questions, please let me know and I will make them clear.  All

6    right?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Please have the defendant sworn.

9          THE COURTROOM DEPUTY:  If you could raise your right

10   hand, please, Mr. Epps.

11                     JAMES RAY EPPS, SR.

12   Having been first duly sworn on oath, was examined and

13   testified as follows:

14         THE COURT:  All right.  Because I placed you under

15   oath, if you testify falsely, you could be prosecuted for

16   perjury or false statement.  Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Tell me your date of birth.

19         THE DEFENDANT:  5/28/61.

20         THE COURT:  And how far did you go in school?

21         THE DEFENDANT:  12th grade.

22         THE COURT:  Have you taken any drugs, medications, or

23   anything else in the last two days that might make it difficult

24   for you to follow these court proceedings?

25         THE DEFENDANT:  No, Your Honor.

```
 1              THE COURT:  Were you born in the United States?
 2              THE DEFENDANT:  Yes, Your Honor.
 3              THE COURT:  Does counsel for either side have any
 4   question as to defendant's competence to enter a plea at this
 5   time, Mr. Gordon?
 6              MR. GORDON:  No, Your Honor.  Thank you.
 7              THE COURT:  Mr. Ungvarsky?
 8              MR. UNGVARSKY:  No, Your Honor.
 9              THE COURT:  I find the defendant is fully capable and
10   competent to enter a plea at this time.
11              So, Mr. Epps, your attorney tells me you wish to plead
12   guilty to the misdemeanor charge of disorderly or disruptive
13   conduct in a restricted building or grounds.  Is that correct?
14              THE DEFENDANT:  Yes, sir.
15              THE COURT:  All right.  I have a copy of the plea
16   agreement that's an 11-page agreement which has a place for
17   your signature.  Did you, in fact, sign this agreement?
18              THE DEFENDANT:  Yes, Your Honor.
19              THE COURT:  Did you read and understand it before you
20   signed it?
21              THE DEFENDANT:  Yes, Your Honor.
22              THE COURT:  And is this the agreement you wish to
23   enter into today?
24              THE DEFENDANT:  Yes, Your Honor.
25              THE COURT:  All right.  I am going to go over a number
```

1    of the terms with you.  Whether I go over a particular term or

2    not is irrelevant.  As long as it is in the agreement, you are

3    bound by it.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  All right.  I'm going to go over some of

6    the non-sentencing terms, then we will talk about the

7    sentencing terms.

8              So first of all, if you plead guilty to this charge,

9    the government will not further prosecute you for the conduct

10   set forth in the statement of offense, which is the other

11   document that you've signed here.  Do you understand that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  In addition, you have agreed to allow law

14   enforcement agents to review any social media accounts operated

15   by you in and around January 6, 2021.  Is that correct?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  The government has agreed not to seek a

18   change in your release conditions pending sentencing, which

19   means unless I say otherwise, you may be permitted to remain on

20   your personal recognizance.  Do you understand that?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do you understand that you have the right

23   to appear in person for this hearing, but you have waived that

24   right and are agreeing to proceed via video conference, is that

25   correct?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  You have also agreed to restitution in the

3    amount of $500, is that correct?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  All right.  Let's talk about sentencing

6    for a minute.

7          The maximum sentence you could receive is one year in

8    prison, a fine of a hundred thousand dollars, and a term of

9    supervised release of up to one year.  Do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Have you had a chance to talk with your

12    attorney about the United States sentencing guidelines?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And those guidelines in this case

15    according to the plea agreement have an estimated guideline

16    range of zero to six months.  Do you understand?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Has anybody promised you the sentence I am

19    going to give you in this case?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Nor could they because nobody knows what

22    sentence I am going to give including me until I have reviewed

23    all of your material.

24          So you understand that I could sentence you anywhere

25    within the guideline range meaning anywhere from probation to

1   six months.  I could also sentence you above the guideline

2   range and give you a sentence of up to one year in prison.  The

3   only thing I could not do is sentence you beyond one year.  Do

4   you understand that?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  All right.  Has anybody made you any

7   promises in order to get you to plead guilty that are not in

8   the plea agreement?

9            THE DEFENDANT:  No, Your Honor.

10           THE COURT:  Have you had enough time to talk with your

11   attorney and are you satisfied with his services?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  All right.  The other document I refer to

14   as the statement of offense, that's a 14-page document that

15   sets forth the facts underlying your plea.  And you have -- is

16   it correct that you have signed that?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Did you read and understand this before

19   you signed it?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Now, this document sets forth the facts

22   that underlie the plea, in other words, the facts the

23   government contends that you engaged in that support the plea.

24   Do you agree that those facts are true?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.  So, for example, that on the

2     evening of January 5, 2021, you stated, I don't even like to

3     say it because I'll be arrested.  We need to go into the

4     Capitol.  I'm probably going to jail for it.

5          And that on January 6, the next day, during the Stop

6     the Steal Rally, you stated to someone, As soon as President

7     Trump is finished speaking, we are going to the Capitol.

8          That you then went to the Capitol grounds, and that at

9     the Peace Circle, others nearby started shaking the security

10    barrier and others surged forward destroying the barriers

11    overwhelming the officers, and that you followed through the

12    downed barriers and continued with others to penetrate the

13    restricted Capitol grounds.

14          In addition, rioters worked together on the west plaza

15    where you were standing to push a large metal sign toward the

16    officers standing between the rioters and the Capitol building

17    and that you briefly placed both of your hands on the sign's

18    fabric and frame.  Other rioters successfully pushed the sign

19    into the group of officers, and the sign's size and impact

20    broke and scattered the police line.

21          Later on police officers deployed chemical spray, and

22    rioters, including you, fell back and dispersed.  You remained

23    on the restricted grounds for a little over a half an hour

24    after this, and there is video evidence that you made at least

25    five attempts to de-escalate conflicts between others rioters

1    and police officers.  You also responded to a text by saying, I

2    was in the front with a few others.  I also orchestrated it.

3              Is that correct, sir?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Okay.  I want to go over the rights you

6    are giving up by agreeing to plead guilty.

7              Do you understand you are not required to plead guilty

8    and you do have a right to go to trial on your charges if you

9    wanted to?  Do you understand that?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  If you went to trial, the government would

12   have the burden to prove you guilty beyond a reasonable doubt,

13   and they would have to convince 12 jurors to unanimously

14   convict you.  Do you understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  You would have the right to have your

17   counsel present with you through the trial.  He could make

18   motions, make objections, and cross-examine government

19   witnesses.  Do you understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  You would have the right to put on a

22   defense if you went to trial.  That means you could put on

23   evidence on your own behalf and call witnesses to the witness

24   stand if you wished, but you would not be required to put on

25   any evidence because you would be presumed innocent.  Do you

1   understand that?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  In addition, if you wished, you could

4   testify at trial, but nobody could make you do that.  And if

5   you decided not to testify, I would tell the jury they couldn't

6   hold that against you.  Do you understand that?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  If you went to trial and you were found

9   guilty, you would have the right to appeal, and if you couldn't

10  afford an attorney, one would be appointed to represent you.

11  Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Do you understand that if I accept your

14  plea today, there will be no trial and there will be no appeal

15  except in a few circumstances I am about to mention.  Do you

16  understand that?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  The only grounds for appeal or for seeking

19  relief from me would be if you received ineffective assistance

20  from your lawyer in connection with sentencing or the plea if

21  new or currently unavailable information became available to

22  you or if I sentenced you above the statutory maximum or above

23  the guideline range.  Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Now that you understand all the rights

1  that you are giving up by agreeing to plead guilty, do you

2  still want to plead guilty?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you have any questions about the rights

5  you are giving up or anything else connected with this guilty

6  plea?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Are you pleading guilty because you are,

9  in fact, guilty?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And has anybody forced you or threatened

12  you to get you to plead guilty?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  How do you plead then to the charge of

15  disorderly or disruptive conduct in a restricted building or

16  grounds, guilty or not guilty?

17          THE DEFENDANT:  Guilty.

18          THE COURT:  I'm satisfied the defendant understands

19  his rights and what he's waiving in agreeing to plead guilty.

20          I find he's entering his plea voluntarily, and there's

21  a factual basis for it.

22          I, therefore, accept the plea and find him guilty of

23  disorderly or disruptive conduct in a restricted building or

24  grounds.

25          Okay.  For sentencing, Nicole, I think we are probably

1   looking at January at this point?

2          THE COURTROOM DEPUTY:  No.  Actually, we are still in

3   December.  December 19 at 10:00 a.m. we can do.

4          THE COURT:  Mr. Gordon?

5          MR. GORDON:  Your Honor --

6          THE COURTROOM DEPUTY:  You are still getting messed

7   up.  It was fine earlier.  Almost a perfect hearing.

8          No, still can't hear you.

9          MR. UNGVARSKY:  Your Honor, while Mr. Gordon tries to

10  get his device operating, I am letting you know that I am

11  scheduled to be in a jury trial December 18 and 19, and I

12  currently don't expect it to resolve.

13         THE COURT:  All right.  Do you think you would be done

14  by the 20th?

15         MR. UNGVARSKY:  Yes, Your Honor.

16         THE COURT:  All right.  Mr. Gordon, can you do the

17  20th?

18         MR. GORDON:  I can, Your Honor.

19         THE COURTROOM DEPUTY:  We can still do 10:00 a.m.

20         THE COURT:  You are sounding good.  10:00 a.m. on the

21  20th, Mr. Gordon?

22         MR. GORDON:  Yes, Your Honor.

23         THE COURT:  Mr. Ungvarsky?

24         MR. UNGVARSKY:  Yes, Your Honor.

25         THE COURT:  Mr. Epps, are you available?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Okay.  We will set it for that date.

3         So, Mr. Epps, just so you understand, between now and

4    then you will be interviewed by the probation department to ask

5    about your employment, background, education.  You may have

6    your attorney with you during that interview if you wish.

7              In addition, both sides may submit sentencing

8    memoranda, and both counsel and you, Mr. Epps, will have the

9    opportunity to speak before I impose sentence.  Do you

10   understand that?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Any questions about that procedure?

13             THE DEFENDANT:  No, Your Honor.

14             MR. UNGVARSKY:  Your Honor, I have a question.

15             THE COURT:  Sure.

16             MR. UNGVARSKY:  Your Honor, I request that Mr. Epps be

17   permitted to -- that the sentencing proceeding be done

18   virtually and that Mr. Epps is permitted to attend virtually.

19             THE COURT:  Okay.  Any objection by the government?

20             MR. GORDON:  No, Your Honor.

21             THE COURT:  All right.  I have held my -- I hold many

22   misdemeanor sentencings remotely if everyone agrees, so I am

23   happy to do that, Mr. Ungvarsky.

24             MR. UNGVARSKY:  Thank you, sir.

25             THE DEFENDANT:  Thank you.

```
 1              THE COURT:  So I guess the only issue is conditions of
 2   release.  Were those set previously?
 3              THE COURTROOM DEPUTY:  Your Honor, they were not.
 4   Ms. Schuck is on the line.
 5              THE COURT:  Okay.
 6              THE PRETRIAL RELEASE OFFICER:  Good afternoon, Your
 7   Honor.  Christine Schuck, Pretrial Services.
 8              THE COURT:  Good afternoon.  And so release conditions
 9   were not previously set, Ms. Schuck?
10              THE PRETRIAL RELEASE OFFICER:  No, Your Honor.  And we
11   submitted a report with a set of proposed conditions of
12   release.
13              THE COURT:  All right.  So I would think weekly
14   telephonic check-in.  I would waive any drug testing or further
15   reporting requirement.
16              Other conditions, Ms. Schuck, that you would
17   recommend?
18              THE PRETRIAL RELEASE OFFICER:  Actually, Your Honor,
19   we are requesting that he be supervised by his home
20   jurisdiction, which is the District --
21              MR. UNGVARSKY:  Your Honor, I'm sorry.
22              THE COURT:  Hold on.  Hold on.  Okay.
23              MR. UNGVARSKY:  I apologize to Ms. Schuck very much
24   for overspeaking her.
25              THE COURT:  I understand.  I understand the issue.
```

1          MR. UNGVARSKY:  Very good.

2          THE COURT:  All right.  So he will be supervised by

3    his home jurisdiction, which will not be -- which is under

4    seal.

5          Okay.  And any other conditions, Ms. Schuck?

6          THE PRETRIAL RELEASE OFFICER:  Yes, Your Honor, so not

7    to obtain a passport or other international travel documents,

8    that he is to notify basically his home jurisdiction in advance

9    of all travel outside that jurisdiction.  The Court is to

10   approve all other travel outside the continental United States.

11   He's to stay out of the District of Columbia except for court

12   or pretrial business.  He is to surrender all passports to the

13   home jurisdiction.  He's not to possess any firearms,

14   destructive devices, or other weapons.  He is to report as soon

15   as possible to the pretrial services officer or supervising

16   officer of contact with law enforcement including arrests,

17   questioning, or traffic stops.  He is to comply with --

18         THE COURT:  All right.  So the other -- hold on.

19         So the other standard conditions.  Okay.

20         THE PRETRIAL RELEASE OFFICER:  Yes, Your Honor.

21         THE COURT:  Mr. Ungvarsky, anything?

22         MR. UNGVARSKY:  Your Honor, first I will just note

23   that we did participate in an interview with pretrial services

24   around 10:30 this morning.  Unfortunately I haven't received a

25   copy of the report, but that's okay.  I want to move forward.

1          Second, I want to note that this event is from January

2     of 2021.  Mr. Epps contacted the FBI two days later, January 8

3     at 2021.  He met with law enforcement in March.  All of the

4     facts set forth in the statement of offense were known to the

5     government in 2021.  So we are two and a half years later, and

6     Mr. Epps has engaged in no misconduct.

7          He had to leave his home due to harassment from

8     certain people, his home, his home state, and his job.  He's

9     living in not the best of straits right now.  So I just ask the

10    Court to -- I don't object to -- I just ask -- I ask the Court

11    to impose minimal pretrial conditions given that there's no

12    indication of any likelihood of any violation.

13          THE COURT:  That's what I intended, Mr. Ungvarsky, but

14    that's why I'm asking, anything specific that is being stated

15    that you are viewing as particularly onerous?

16          MR. UNGVARSKY:  I think the travel, the requirements

17    as to travel, are onerous.  I think he should be able to travel

18    outside his home jurisdiction freely as he has for the last two

19    and a half years.  He's agreeable to turning in his passport.

20    That's not an issue.  He's agreeable to not possessing a

21    firearm, reporting contact with law enforcement.

22          I started to lose track as they were being stated

23    quickly but --

24          THE COURT:  Ms. Schuck, we can vacate the travel

25    restriction within the United States.  He doesn't need to

1   obtain advanced approval for that.

2           THE PRETRIAL RELEASE OFFICER:  Your Honor, it wasn't

3   approval.  It was just to notify.  So he doesn't have to notify

4   anybody?

5           THE COURT:  Yeah, I'm not going to require

6   notification on that.

7           Okay.  Mr. Gordon, anything else?

8           THE DEFENDANT:  Excuse me.

9           THE COURT:  Yes, Mr. Epps.  Go ahead.

10          THE DEFENDANT:  Can I possibly talk to my attorney for

11  just one second?

12          THE COURT:  Yes.  Sure.  Let's put them in a breakout

13  room for one minute, Nicole.

14          THE COURTROOM DEPUTY:  Sure.

15          (A brief break was taken.)

16          THE COURT:  See if you can bring them back.

17          THE COURTROOM DEPUTY:  Okay.

18          THE COURT:  Okay.  We are back.  Everyone is back.

19  Mr. Ungvarsky, based on that, is there anything else you wish

20  to add?

21          MR. UNGVARSKY:  There is, Judge.  Mr. Epps currently

22  lives in a different part of the country than where I live.

23  Your Honor, I'm going to ask that the Court not impose a

24  condition of no possession of a firearm.  You know, Mr. Epps

25  has, as the Court knows, as the United States Supreme Court has

```
 1    ruled in Bruin and other cases, all Americans have a
 2    constitutional right under the Second Amendment to possess a
 3    firearm.  It's a fundamental constitutional right, as
 4    fundamental as any other.  Even upon a final --
 5              THE COURT:  All right.  Here's what I am going to do
 6    because I have actually ruled that January 6 misdemeanor
 7    probationers do not -- in a case I had, I ruled that the Second
 8    Amendment right did not overcome the necessity of the
 9    restriction.  This was not pretrial.  This was a probationer in
10    a case called Shaw.  So what I would ask you to do is read
11    that, and if you wish to challenge -- and perhaps his specific
12    living circumstances are particularly relevant, and so you may
13    need to file this under seal or redacted given the issues you
14    mentioned previously, but I am going to impose the restriction
15    until I review your pleading and decide otherwise.  Okay?
16              MR. UNGVARSKY:  Understood.
17              THE COURT:  Okay.  Anything else, Mr. Ungvarsky?
18              MR. UNGVARSKY:  No, Your Honor.
19              THE COURT:  Okay.  Mr. Gordon, anything else?
20              MR. GORDON:  Yes, Your Honor (inaudible).
21              THE COURT:  All right.  You are really breaking up
22    again.
23              MR. GORDON:  I apologize, Your Honor.  Is that better
24    now?
25              THE COURT:  A little.
```

1           MR. GORDON:  Is this any better, Your Honor?

2           THE COURT:  Yes, that is.

3           MR. GORDON:  All right.  I was saying that due to the

4    unusual nature of this case, there's one other statement the

5    government would like to put on the record here at this time,

6    which is that Mr. Epps, January 6, was not before, during, or

7    after a confidential source or undercover agent working on

8    behalf of the government, the FBI, or any law enforcement

9    agency.  I would like to confirm that Your Honor will be

10   putting the statement of offense on the docket.

11          THE COURT:  The last sentence I didn't hear.  We will

12   confirm what?

13          MR. GORDON:  That you will be filing statement of

14   offense on the docket.

15          THE COURT:  Okay.  The statement of offense will be

16   filed on the docket.  Okay.

17          All right.  Thank you.  Mr. Epps, we will see you via

18   video in December.

19          All right.  Thank you, everyone.

20          THE DEFENDANT:  Thank you, Your Honor.

21          THE COURT:  Court's adjourned.

22          (The hearing concluded at 3:29 p.m.)

23                            – – –

24

25

C E R T I F I C A T E

      I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

9/27/23              s/ Tammy Nestor
                     Tammy Nestor, RMR, CRR
                     Official Court Reporter
                     333 Constitution Avenue NW
                     Washington, D.C. 20001
                     tammy_nestor@dcd.uscourts.gov