UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

v. : 23-CR-321-JEB

JAMES RAY EPPS, SR :

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMO**

COMES NOW, the defendant, James Ray "Ray" Epps, SR, through counsel, and respectfully responds to the Government's Sentencing Memo (ECF 16).

1. *First*, Mr. Epps did not "engage[] in felonious conduct" on January 6th. *See* ECF 16 at 2. As he admitted in his Statement of Offense (ECF 5) and as his charge of conviction is clear, his crime is a misdemeanor disorderly or disruptive conduct. The government does not elaborate on its contention, which seems to seek to give the false impression that the government's request for a six-month period of incarceration comes from magnanimity. It surely does not and is not. Mr. Epps should no more be sentenced for "felonious conduct" as than the hundreds of other defendants who have been sentenced as misdemeanants for their misdemeanor offenses, whether they came after a trial, a post-information/post-indictment negotiated plea, or an early pre-charge resolution like Mr. Epps.

2. *Second*, to be clear, Mr. Epps is not working, but he is not "retired" as put it by the government, ECF 16 at 1. He was running a family property that contained a special-events venue and other businesses before selling it all and going into hiding because of threats against him and his wife as a result of dangerous misinformation

1

stoked on the internet about him. He enjoys no golf, tennis, travel, or other trappings of retirement. They live in a trailer in the woods, away from their family, friends, and community. There, Ray and Robyn Epps attempt to stretch their savings far earlier than anticipated contrary to their life plans and needs.

    *3.*    *Third*, the government's arguments about Mr. Epps and his conduct on January 6th are grounded in inaccurate, sinister suppositions, perspectives, and inferences that present a misleadingly aggravated view of Mr. Epps' actions than what he actually did. Some corrections are worth making now. Mr. Epps did not point forward toward the line of officers. ECF 16 at 11. He pointed upward. That movement had nothing to do with the officers or with getting the sign toward officers. The sign did not "pass beyond his grasp." *Id.* (caption to Exhibit 11). Mr. Epps barely touched the sign as it passed directly over, and by, him. If he had not lifted it over his head, it would have been pushed right into him. Afterall, in the same episode (not so-called two separate acts of violence) when it was past him, he turned away and walked away from it to the front to divide protestors from the police and to deescalate the protestors. Nor was he pushing forward in unison with others, *see id.* at 12, before he worked his way to the front. To the contrary, Mr. Epps felt stuck in the middle of a congested crowd. He moved as he could to get out of it. The videos show him moments later walking in free space between protestors and officers, trying to deescalate the protestors in support of the police officers. All direct and inferential evidence support that, while present, Mr. Epps did not engage in violence. The idea that Mr. Epps engaged in any act of violence toward the officers he was supporting is contrafactual to the full range of his behavior on January 6.

  *4.*  *Fourth*, on both January 5 and at the Trump rally on January 6, Mr. Epps sought to support *peaceful protest* at the Capitol. With the receipt of multiple mail-in ballots arriving at his property for persons who did not live there, he observed potential irregularities himself, and he had absorbed the propaganda espoused on Fox News. At that time, he understandably held concerns about the election's accuracy. But as more recent statements by Mr. Epps make clear – including but not limited to his statements to the PSR writer – he has concluded that "Joe Biden won fair and square." Similarly, the government exaggerates a belief by Mr. Epps that Antifa was behind January 6th. He is the victim of a conspiracy theory, not the propagator of one. On January 6 and in the months that followed, he knew that many of the people who were there that day and acting out were fellow Trump supporters. He never attributed the full violence to Antifa members. For example, Mr. Samsel and the others who Mr. Epps spoke to about staying still, backing up, and not making problems for the police officers were people that Mr. Epps understood to be fellow Trump supporters. For a time afterward, as someone who believed in peaceful protest and saw non-peaceful agitation, he questioned how so many Trump supporters could be so wrong and thought there might also be left-wing persons amidst the crowd stirring the pot. Mr. Epps concluded long ago that any such thoughts were wrong, as he has reflected in statements made long after his congressional testimony and newspaper interview. Most illuminating for him was watching the Select Committee proceedings. He educated himself. Counsel makes clear what should already be clear: Mr. Epps does not believe the Antifa lies that were fed over the airwaves before and after January 6th (and that seem to be recurring as the 2024 Presidential election heats up).

President Trump and his supporters caused and were the participants at the January 6th riot.

5.      *Fifth*, this Court should apply Guideline § 4C1.1 and establish a two-level decrease in Mr. Epps' offense level. Mr. Epps did not engage in violence against police officers, and the government's arguments against application of the guideline are just makeweight. While his hands briefly touched the metal sign, he did not push it toward police officers. There is no evidence that he had any idea that was going to happen. The evidence shows that he stopped touching the sign and was walking in a different direction when others pushed it forward. He did not point forward to officers. He pointed upward. And in any event, his pointing had nothing to do with the sign or officers. He was not part of a "rugby scrum that surged forward and pushed against" officers. *Id.* at 18. First, it is not clear to counsel that there was such a scrum, or that others had that intent; but regardless, Mr. Epps is seen being pushed himself and trying to push a guy away from him so he could turn and move away. He is viewed turning and walking in a different direction. And moments later he is engaging in one of the *many instances* in which he tried to quell violence and actions toward officers. It makes absolutely no sense that he would try to inflict harm on law enforcement seconds before while they were the ones was trying so hard to protect and had already tried to protect when speaking with Mr. Samsel and others earlier. The argument that he engaged in violence collapses in the face of the evidence.

The government's contention is also refuted by the charge before the Court. The government gave Mr. Epps a take-it-or-leave-it plea offer to an offense pursuant to 18 U.S.C. § 1752(a)(2), rejecting counsel's counterproposals under 40 U.S.C. §

5104(e)(2)(D) and 18 U.S.C. § 1752(a)(1). Significantly, as it relates to this guidelines provision, Mr. Epps is not convicted under § 1752(a)(4), which condemns "knowingly engages in *any act of physical violence* against any person or property in any restricted building or grounds. (emphasis added)." If Mr. Epps had been convicted of Subsection (a)(4), then the reduction would likely not apply. But in contrast, Subsection (a)(2) does not include violence as a component. Congress excluded "violence" for a reason with regard to Subsection (a)(2); the government cannot simply read it back in. Thus, Mr. Epp's conviction for which he is about to be sentenced does afford him the benefit of the 4C1.1 offense level reduction.

The government cites "three cases in which courts have rejected the application of § 4C1.1 to January 6 defendants who engaged in violence." *Id.* at 18 (citing cases). Yet that is the point, those defendants were charged and convicted of violent offenses, and their facts clearly established acts of violence. Brian Gunderson and Kaleb Dillard were both convicted of assaults on federal officers, in violation of 18 U.S.C. § 111(a)(1). Mr. Baquero had a § 111(a) charged dismissed as a part of a plea agreement in which he pleaded guilty civil disorder before this very Court, which knows that case facts well itself. Of course, a grand jury found probable cause that Mr. Baquero engaged in violence through its § 111(a) indictment. The government's sentencing memo in that case reflects violence by Mr. Baquero: he pushed twice against officers within the Capitol and, separately, grabbed the hand of an officer that was holding a baton, a classic assault on a police officer.

The guideline went into effect after much discussion and debate (with a series of objections by the government that it partially recycles here) long after January 6, 2021.

The guideline applies to defendants who committed offenses on that day in this place no different than it applies to defendants who committed offenses on other days, in other places. And because § 4C1.1 applies, this Court should apply Guideline § 5C1.1: "If the defendant received an adjustment under § 4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, *a sentence other than a sentence of imprisonment*, in accordance with subsection (b) or (c)(3), *is generally appropriate* (emphasis added)." For Mr. Epps who was convicted of a non-violent misdemeanor and who is in Category A, a sentence other than imprisonment is appropriate. Of course, the Court need not apply the adjustment to impose a probationary sentence as a sentence of 0 months (probation) is within the sentencing range even with the offense level of 8, and courts in this district routinely gave non-incarceration sentences for similar conduct before the existence of §§ 4C.1.1 and 5C1.1. The guidelines simply provide *even more* of a basis for a probationary sentence than already existed.

*Sixth*, the government's argument with regard to the need to avoid unwarranted sentencing disparities misses the mark as to the appropriate sentence. The defense agrees with the government that the Court must sentence Mr. "Epps based on his own conduct and relevant characteristics." *Id.* at 25. The Court does so in a way that respects due process by ensuring that the severity of his sentence is warranted when compared to the sentences of similarly situated defendants. Mr. Epps' personal characteristics are at the top one percent of mitigating for all January 6th defendants. With the exception perhaps of those defendants who the government entered into formal cooperation agreements for assistance in prosecuting the most culpable and violent defendants and who consequently

6

received substantially reduced sentences, Mr. Epps' cooperation with law enforcement and legislative authorities, combined with the vitriol and danger he has received as a result, stand in high contrast to all other January 6 defendants.

Additionally, the government's reliance on *Straka*, a § 40-5104(e)(2)(D) case, highlights the close connection between the charge that Mr. Epps entered his guilty plea and the Class B petty offenses that exclude the additional element that the disorderly conduct was in a restricted area. Mr. Straka's disorderly conduct was also outside the Capitol in a restricted area, far closer to entry than Mr. Epps.

The government contends that Mr. Epps conduct was worse than Mr. Straka's and thus Mr. Epps' deserves a harsher sentence. More so, the government reasons that the difference is so great that this Court should give six months in prison whereas Mr. Straka received three years of probation with ninety days of home confinement. Even if one were to accept the premise than Mr. Epps' conduct was worse – *and it was not* – the government's proportionality makes no sense. Add to that the fact that Mr. Straka's conduct was worse than that of Mr. Epps, as is reflected in the government's sentencing memo in Mr. Straka's case and in the transcript of his sentencing hearing. To be true, Mr. Straka's case is yet another example supporting that Mr. Epps should receive probation of no more than a year, absent any home confinement, with standard conditions.

On January 5th, Mr. Epps spoke to some members of a group that had already formed at Black Lives Matter Plaza and encouraged them to go *peacefully* to the Capitol the next day. He had no influence over them; they called him a Fed. Nor would he have any influence on anyone who might have seen a livestream of his remarks that were getting shouted down. As he talked with that group, there were other, separate groups at

7

the Plaza. In talking with this group, Mr. Epps was trying to suppress their irrational desire got looking for so-called Intifada members and to cause problems for the police. Similarly, at President Trump's rally the next day, he encouraged others to go to the Capitol – intending in a peaceful way. Folks were already planning to and heading that way. Others were similarly pointing out the direction of the Capitol. He was not leading. And he never advocated violence or anything close to violence. Mr. Epps was speaking to people before him as a man and father, not a social media leader as was Mr. Straka. In contrast, before January 6th, Mr. Straka said that a civil war had begun and "we're not going to be peaceful much longer." A founder of a prominent social movement, Mr. Straka fired-up his supporters to violent reject the election results at the Capitol.

Mr. Epps went to the Capitol from a sanctioned political rally to register his political view in a peaceful way. Mr. Straka traveled to the Capitol to add to existing violence; he only went to the Capitol *after* hearing it had been breached. Mr. Epps never encouraged violence or "storming." Upon arrival, Mr. Straka actively encouraged more than a million followers to storm the Capitol. As opposed to Mr. Epps' signature efforts of helping police officers, Mr. Straka encouraged those with him to take an officer's protective shield from the officer, chanting along with them as they did so and after, "take it, take it." After leaving the scene, Mr. Straka saw what was happening on social media and television, and encouraged his over 1 million social media followers to "HOLD. THE. LINE!!!!.".

Mr. Epps is honest, credible, and reliable in his accounts. At Mr. Straka's sentencing hearing, Judge Friedrich found that Mr. Straka was not credible about what he knew and his view of what was happening at the Capitol. Tr. of Sentencing Hearing, *U.S.*

*v. Straka*, 21-cr-579-DLF (ECF 60) at 20. She found that he "was acting and encouraging and condoning." *Id.* at 29. As of sentencing, "he still persists in this idea that it is okay to storm the Capitol to contest an election." *Id.* at 30. Judge Friedrich found it "deeply troubling that Mr. Straka used his social media platform to encourage and defend the unlawful acts that occurred on January 6 … to his "over a million followers." *Id.* at 41. Mr. Epps, on the other hand, is viewed as a traitor and pariah by Trump supplicants who have ingested lies about him. Judge Friedrich imposed three months of probation, with three years of probation. *Id.* at 44. That extended length of probation was because, for Mr. Straka personally, she felt "deterrence is so important" to this social movement leader. *Id.* Mr. Straka encouraged violence; Mr. Epps discouraged it. Mr. Straka continued to believe those views. Mr. Epps rejects them. The government's referencing this case is helpful: This Court should impose a sentence on Mr. Epps that is less punitive than that given Mr. Straka consistent with counsel's request in the initial Defendant's Position on Sentencing.

## CONCLUSION

For the reasons above, on behalf of Ray Epps, undersigned counsel requests that the Court impose a probationary sentence with conditions that may but do not necessarily include a firearms restriction, restitution of $500, and the mandatory $25 special assessment. Counsel reserves the right to make additional requests at the time of the sentencing hearing.

                                                                                                Respectfully submitted,

                                                                                                RAY EPPS, SR.
                                                                                                     By Counsel

/s/
Edward J. Ungvarsky, Esquire
DC Bar No. 45934
Ungvarsky Law, P.L.L.C.
421 King Street, Suite 505
Alexandria, Virginia 22314
Desk: 571/207-9710
Cell: 202/409-2084
Fax: 571/777-9933
ed@ungvarskylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January 2024, I electronically filed a true copy of the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties.

/s/
Edward J. Ungvarsky, Esquire
DC Bar No. 45934
Ungvarsky Law, P.L.L.C.
421 King Street, Suite 505
Alexandria, Virginia 22314
Desk: 571/207-9710
Cell: 202/409-2084
Fax: 571/777-9933
ed@ungvarskylaw.com